11-CV-05581-CMP



FILED ___ LODGED
RECEIVED

JUL 27 2011

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT

for the

## WESTERN DISTRICT OF WASHINGTON

### AT TACOMA

REMEDIOS S. OLIVEROS,          )
                               )   **CV11 - 5581** *RBL*
                 Plaintiffs,   )   CASE NO.
                               )
        v.                     )
                               )   VERIFIED COMPLAINT
DEUTSCHE BANK NATIONAL TRUST   )
COMPANY, N.A. AS TRUSTEE FOR GSAA )
HOME EQUITY TRUST 2006-18;     )
NORTHWEST TRUSTEE SERVICES, INC., )
                               )
                 Defendants,   )   JURY TRIAL DEMANDED
                               )

Plaintiff, REMEDIOS S. OLIVEROS (herein "Plaintiff"), proceeding without counsel, hereby

serves her Verified Complaint and alleges claims against Defendant DEUTSCHE BANK

NATIONAL TRUST COMPANY, N.A. as Trustee for GSAA Home Equity Trust 2006-18 and

Defendant NORTHWEST TRUSTEE SERVICES, INC. and as grounds states:

**PARTIES AND VENUE**

1. Plaintiff Remedios S. Oliveros is and was at all times material hereto a *sui juris*

   resident of the State of Washington and over the age of eighteen (18), and the

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

legal owner of the residential property identified hereinbelow as <u>1145 Villanova Street NE, Olympia, WA 98516.</u>

2. Defendant, DEUTSCHE BANK NATIONAL TRUST COMPANY, N.A. as Trustee for GSAA Home Equity Trust 2006-18 ("DEUTSCHE") is and was at all times material hereto a national association whose address is given as <u>1761 E St. Andrews Place, Santa Ana, CA 92705-4934.</u>

3. Defendant, NORTHWEST TRUSTEE SERVICES, INC. is and was at all times material hereto a Washington Corporation whose registered agent is: JEFFREY STENMAN, <u>13555 SE 36th Street Suite 200, Bellevue, WA 98006</u> accepts service for the Defendant, NORTHWEST TRUSTEE SERVICES, INC.

4. The residential property the subject of this action (hereafter the "Property") is located at <u>1145 Villanova Street NE, Olympia, WA 98516</u> in Thurston County, Washington has an Assessor's Parcel Number: <u>309780-0070-05</u> and is legally described as:

> LOT 78 OF PLAT OF GEORGETOWNES ESTATES DIVISION TWO, AS PER PLAT RECORDED FEBRUARY 4, 2003 UNDER RECORDING NO. 3500874, RECORDS OF THURSTON COUNTY AUDITOR; SITUATE IN THE COUNTY OF THURSTON, STATE OF WASHINGTON.

5. Venue is proper in this Court under 28 USC §1391 because the affected subject Property is located in Washington; the Defendants have substantial contacts within Washington; the substantial events and acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Thurston County, Washington.

**JURISDICTION**

6. This action arises under Federal Question 28 USC §1331 and this Court has

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

Page 2 of 11

Jurisdiction under 15 USC §1640 TILA; 12 USC §2601-2609 RESPA and implementing regulations 24 CFR part 3500; 15 USC §§ 41-58, FTCA and implementing regulations 16 CFR §433.2; 15 USC §1692 FDCPA; 15 USC §1608 FCRA; 42 USC §§1981-1986, Equal Rights Act; 31 USC §5311 Banking Secrecy Act/Patriot Act and implementing regulations 31 CFR §103.11; 5 USC § 552, The Privacy Act; 12 USC §5301 Dodd-Frank Wall Street Reform and Consumer Protection Act (P.L. 111-203); 26 USC § 856, §2039, §2041, §2514b and other provisions of the U.S. Tax Code.

7.  This Court has supplemental jurisdiction over any remaining state law claims under 28 USC §1367(a) because the state law claims are so related to the federal claims that they from part of the same case or controversy.

8.  This case also arises under the Washington Deed of Trust Act, RCW 61.24 *et. seq* (DTA) and the Washington Consumer Protection Act, RCW 19.86 (CPA), the Commercial Code RCW 62A, the Washington Securities Act, RCW 61.20.

**Material Facts Common to All Counts**

9.  The chain of title for the subject Property shows the plaintiff holding undisputed clear legal title and equitable title up until May 24th, 2004, pursuant to the Statutory Warranty Deed recorded in Thurston County, Washington under Auditor's file number **3643718** (copy attached).

10. Plaintiff is the author of the unregistered/unsecured Note referenced in the common law document entitled "Deed of Trust" recorded in Thurston County, WA, under Auditor's file no. 3836714 (copy attached) and Plaintiff dictated the terms of the

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

unregistered Note and Plaintiff has personal firsthand knowledge of the said terms.

11. There is no evidence the Plaintiff's unregistered/unsecured Note and or Deed of Trust was or is registered/secured in the WASHINGTON UCC registry or subject to Uniform Commercial Code which Washington has codified as RCW 62A.

12. Pursuant to Plaintiff's Affidavit, Plaintiff denies the Note relied upon by the Defendant(s) is the same Note referenced in the said Deed of Trust.

13. Pursuant to Plaintiff's Affidavit, Plaintiff denies the Beneficiary in fact accelerated the Note due date.

14. Pursuant to Plaintiff's Affidavit, Plaintiff denies the Beneficiary in fact declared the Plaintiff in default.

15. Pursuant to Plaintiff's Affidavit, Plaintiff disputes the validity of the alleged debt.

16. Pursuant to Plaintiff's Affidavit, Plaintiff denies acquiescence to the Defendant(s) non-judicial foreclosure proceedings.

17. On or about April 21, 2011, Defendant(s) again slandered title to the subject Property and injured the Plaintiff by recording an Amended Notice of Trustee's Sale in the public records of Thurston County Washington under Auditor's File No. 4207642.

**CLAIMS FOR RELIEF:**

18. The Plaintiff incorporates all preceding paragraphs in these allegations.

19. Disparity. The subject Note is inadmissible pursuant to Washington Courts rulings that *"show me the note"* arguments lack merit. Conversely, and if justice is to be applied equally, any demand for payment/proof of payment/notice of default under that note also lacks merit. If not, these courts created a "disparity". Where demand for

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

Page 4 of 11

production of the actual Note is forbidden, demand for production of actual Payment is also forbidden and an actual Default cannot be proven.

20. Breach of Contract - unanswered QWR: Plaintiff sent a Qualified Written Request to the Defendant's purported loan servicer and to date Plaintiff has never received any response and/or received an inadequate response that failed to comply with 12 U.S.C. § 2605(e). Plaintiff disputes that the Defendants are in compliance with RESPA.

21. Equitable Estoppel - invalid debt: Plaintiff alleges that Defendant(s) are in violation of the Fair Debt Collection Practices Act (FDCPA), 15 USC §1692 – 1692p, by failing to offer verification of the alleged debt. Plaintiff disputes the alleged debt and requestes verification of the debt from all claimants who identified themselves as debt collectors. Plaintiff has received no verification of the debt to date. The Defendants are required to cease and desist all collection activities until the offer to verify or the actual verification has been provided which must include discontinuance of the Trustee's Sale until the debt is verified. Plaintiff alleges that Defendant(s) are in violation of the FDCPA.

Secondly, it appears the Defendant(s) are the factor/purchaser and agents of the factor/purchaser of defaulted loans. Therefore the Defendants are further subject to the FDCPA. Defendants failed to offer to validate the debt, never sent a dunning letter, and took non-judicial action to collect the unsecured alleged debt all which violated FDCPA. Others of the Defendants never responded to requests for validation.

22. Erroneous Credit Reporting: Defendant(s) violated the Fair Credit Reporting Act (FCRA), 15 USC § 1608, by permitting or requesting erroneously reporting the

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

alleged debt/obligation on the Plaintiff's credit report. Plaintiff properly disputed this alleged debt to credit reporting companies. To date Plaintiff has received no validation of the debt but the matter remains on Plaintiff's credit report.

23. Foreclosure of Incorrect Note: Pursuant to Plaintiff's Affidavit, Plaintiff denies the Defendant(s) are foreclosing under or on the correct Note. Plaintiff disputes the authenticity of the purported Note relied upon by the Defendants.

24. Forfeiture on Foreclosure: When the original Lender/Beneficiary transferred the Note to a tax exempt REMIC/REIT for tax purposes, a gift or transfer tax would have been incurred if the REMIC/REIT failed make the required election to be treated as tax exempt and/or failed to file a tax return and statement showing the Plaintiff's property acquired as part of the asset pool. Then latter the REMIC/REIT would have had to make an election to treated the Plaintiff's property as foreclosure property prior to foreclosing (26 USC §856). If there is a failure of compliance the transaction is prohibited under 26 USC §857(b)(6)(B)(iii) and §1221(a)(1). There is no evidence the required elections, tax returns and statements where ever made/filed. These failures caused Defendant(s) forfeiture on foreclosure and hence the Defendant(s) lack standing to foreclose.

25. Recoupment and Setoff: Pursuant to 15 USC §77b(a)(1); 15 USC § 78c(a)(10); RCW 21.20.005(12)(a); RCW 21.20.310(9) the Plaintiff's Note is in fact a non-negotiable Security (financial asset). It guarantees Plaintiff the right of recoupment and setoff pursuant to CFR 16 § 433.2, 15 U.S.C. §1640. It was taken subject to the Plaintiff's claims and defenses. There is no evidence of the Defendant(s) standing to foreclose

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

1    non-judicially.

2   26. <u>False Claim – failed endorsement(s)</u>: The Plaintiff's Note is part of Plaintiff's non-
3       negotiable Security and does not actually have a holder in due course, per se, but has
4       more of a common law holder for value. Each successor in interest must endorse the
5       Note to transfer the Security as a 'unit'. Failure to endorse it for a transfer will effect
6       the successor's forfeiture on foreclosure and effect the Plaintiff's right of recoupment.
7       The Note relied upon by the Defendant(s) appears to have no endorsements
8       whatsoever and therefore Defendant(s) have no standing to foreclose.
9

10  27. <u>Erroneous Alleged Default</u>: Without knowing who the true beneficiary is, which can
11      only be determined by examining the successive intervening endorsement to the Note,
12      the Defendants only alleged default was declared by a purported beneficiary and thus
13      the Defendants have failed to fully comply with the provisions of the Washington
14      Deed of Trust Act regarding the beneficiary's obligation to declare a default. Plaintiff
15      disputes the alleged default.
16

17  28. <u>Material Violations – Washington Deed of Trust Act</u>. Plaintiff is unaware of any
18      evidence that the purported Note was ever endorsed or transferred to the Defendant.
19      According to the Assignment of Deed of Trust the alleged beneficiary, Wells Fargo
20      Bank, N.A. was replaced with the Defendant, DEUTSCHE as successor beneficiary at
21      about the same time the loan allegedly went into default. DEUTSCHE violated the
22      Real Estate Investment Trust agreement. Also DEUTSCHE executed the Appointment
23      of Successor Trustee 3 months before DEUTSCHE was assigned the deed of trust.
24      Thus, the entire foreclosure proceeding is material violation of the Deed of Trust Act.
25
26

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

29. <u>Slander of Title – Notice of Trustee's Sale</u>. There is no evidence that the Defendant(s) are within the statutory and equitable parameters required when they recorded the Notice of Default which slandered title to the Plaintiff's property. The Notice of Default only alleges a default it does not prove a default. The Defendants foreclosure process is a scandalous and impertinent inference that the Plaintiff defaulted/failed to pay his obligation, not a proven fact. Defendant(s) have injured the Plaintiff.

30. <u>Declaratory Relief</u>: This is an action for declaratory relief which is being brought pursuant to 28 USC § 2201 and FRCR 57 to determine as to whether Assignment of Deed of Trust relied upon by the Defendants is fraudulent or invalid since there are no corresponding endorsements of the Note; and if so, to determine if the subsequent foreclosure documents i.e. Appointment of Successor Trustee, Notice of Default, Notice of Trustee's Sale, even a threatened Trustee's Deed are invalid.

31. <u>Injunction</u>: This is an action for injunctive relief which is brought upon proper legal and equitable grounds. Pursuant to RCW 61.24.130, injunctive relief may be based on "material violations" of the RCW 61.24 *et. seq.* and is not strictly limited to "irreparable harm". Plaintiff has no remedy to redress the harm caused by the purposed Trustee's Sale because the injuring party is believed to be statutorily/ civilly dead/bankrupt. Plaintiff is entitled to a temporary restraining order and a preliminary injunction until this matter is decided and likely preserved with a permanent injunction against the Defendants.

**WHEREFORE,** the Plaintiff prays for judgment to be entered jointly and severally herein against all Defendants as follows:

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

Page 8 of 11

(a) For a permanent injunction of any further foreclosure proceedings against the subject property known as <u>1145 Villanova Street NE, Olympia, WA 98516</u>; or in the alternative,

(b) For a Rescission of Trustee's Deed or payment of monetary damages in the amount of $285,000.00 plus other related costs and fees for this action and for relocation if a trustee's sale occur during the course of this litigation.

(c) For an order rescinding all related publically recorded foreclosure documents and/or having the documents stricken from the public record;

(d) For a judgment pursuant to the provisions of the Fair Debt Collection Practices Act and Fair Credit Reporting Act for each violation and for punitive damages plus per diem adjustments and possibly Private Attorney General fees as prescribed by law to be determined at trial; *Graziano v. Harrison*, 950 F.2d 107, 113 (3d. Cir. 1991), 15 U.S.C. § 1692(a)(3), (see *Zagorski v. Midwest Services, Inc.* F.3d – (1997 WL 695401, 7th Cir.) or 128 F.3d 1164 (7th Cir. 1997);

(e) For actual and statutory damages in whatever amount this Court shall find appropriate to compensate the Plaintiff for the losses she has suffered;

(f) All statutory damages to which the Plaintiff is entitled under Fair Debt Collection Practices Act, Fair Credit Reporting Act, Washington Consumer Protection Act, Usury Statute, TILA, RESPA, and any other applicable laws;

(g) Plaintiff demands a temporary restraining order and preliminary injunction;

(h) For actual damages, costs and fees associated with this claim;

(i) For any other remedies and compensations this court deems appropriate.

VERIFIED COMPLAINT

**Remedios S. Oliveros, Plaintiff**
**1145 Villanova Street NE**
**Olympia, WA 98516**
**(360) 515-8616**

1  Respectfully submitted this _27_ day of July, 2011,

2                          **VERIFICATION**

3  I, the under signed Plaintiff, do affirm the foregoing Verified Complaint, the allegations

4  therein, the pleading and contents to be true, correct, complete, to the best of my

5  knowledge, information and belief.

6

7                  Plaintiff: Remedios S. Oliveros

8

9          Signature: _Remedios S. Oliveros_

10                          **JURAT**

11

12  I _Diane M. Dettling_ a Notary Public certify that I know or

13  have satisfactory evidence that <u>Remedios S. Oliveros</u> appeared before me, and executed this

    Verified Complaint as her sworn statement as a free and voluntary act of her own will under

14  penalty of perjury.

15  I certify under PENALTY OF PERJURY under the laws of the State of Washington, County

16  of _Pierce_ that the foregoing paragraph is true and correct.

17

18  DATED: _7.27.11_

19  _Diane M. Dettling_

    Notary Public

20  My appointment expires _9.22.2014_

```
SEAL   Notary Public
       State of Washington
       DIANE M DETTLING
My Appointment Expires Sep 22, 2014
```

21

22

23

24

25

26

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

Page 10 of 11

1

# EXHIBITS ATTACHED

2

Exhibit A – Statutory Warranty Deed (3643718)

3

4

Exhibit B – Deed of Trust (3836714)

5

Exhibit C – Appointment of Successor Trustee (4000589)

6

Exhibit D – Assignment of Deed of Trust (4000588)

7

Exhibit E – Amended Notice of Trustee Sale (4207642)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

VERIFIED COMPLAINT

Remedios S. Oliveros, Plaintiff
1145 Villanova Street NE
Olympia, WA 98516
(360) 515-8616

Page  11 of 11

# EXHIBIT "A" ATTACHED

# (HEREUNDER)

12

WHEN RECORDED RETURN TO:
Name:      REMEDICS S. OLIVEROS
Address:   1145 VILLANOVA STREET
           OLYMPIA, WA  98516

Thurston County Treasurer

Real Estate Excise Tax paid ___4005 00___

By ___M. Taylor___ Deputy

24 MAY '04 324572

**Escrow Number:** 200485587
Filed for Record at Request of: *STEWART TITLE*

# STATUTORY WARRANTY DEED

**The Grantors,** LANDMARK HOMES INC., A WASHINGTON CORPORATION for and in consideration of Ten Dollars and other good and valuable consideration in hand paid, conveys, and warrants to REMEDICS S. OLIVEROS, A MARRIED MAN, AS HIS SEPARATE ESTATE the following described real estate, situated in the County of Thurston, State of Washington:

LOT 78 OF PLAT OF GEORGETOWNES ESTATES DIVISION TWO AS RECORDED FEBRUARY 4, 2003 UNDER AUDITOR'S FILE NO. 3500874 IN THURSTON COUNTY WASHINGTON

Recording Requested By:
Stewart Title
_99 7802_

SUBJECT TO: MATTERS OF PUBLIC RECORD

Assessor's Property Tax Parcel/Account Number: 5055-00-07800

Dated: MAY 17, 2004

LANDMARK HOMES INC.

BY:_____          BY:_____
DAVID J. LITOWITZ
PRESIDENT

STATE OF Washington          )
                             ) ss.
COUNTY OF Thurston           )

I certify that I know or have satisfactory evidence that DAVID J. LITOWITZ   is the   who appeared before me   and  said person acknowledged that he signed this instrument, on oath stated that he is authorized to execute the instrument and acknowledged it as the PRESIDENT of LANDMARK HOMES, INC., to be the free and voluntary act for the uses and purposes mentioned in this instrument.

Dated: MAY 17, 2004

Name: CARRIANNE BALLOU
Notary Public in and for the State of Washington
My appointment expires: June 21, 2005

3643718
Page:   1 of 1
05/24/2004  03:42P
Thurston Co, WA

STEWART TITLE OF WESTERN        D        $19.00

*13*

# EXHIBIT "B" ATTACHED

# (HEREUNDER)

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X9999-01M**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN  55121-1663**

Assessor's Parcel or Account Number: 50550007800
Abbreviated Legal Description:
L78 Georgetownes Est #2
[Include lot, block and plat or section, township and range]   Full legal description located on page 3.

Trustee: **NORTHWEST TRUSTEE SERVICES, LLC**

——————————————— [Space Above This Line For Recording Data] ———————————————

202232485        3 **DEED OF TRUST**        0152675856
**TRANSNATION TITLE**
DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **MAY 23, 2006** , together with all Riders to this document.
**(B) "Borrower"** is
**REMEDIOS S. OLIVEROS, AS HER SEPARATE ESTATE**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  **WELLS FARGO BANK, N.A.**

Lender is a  **National Association**
organized and existing under the laws of   **THE UNITED STATES OF AMERICA**

**WASHINGTON** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      FORM 3048   1/01

Page 1 of 19                                                              SWA01  Rev 08/13/01



3836714
Page   1 of 25
06/01/2006 03:23P
Thurston Co, WA

TRANSNATION TITLE INSURAN    DT    $57.00

15

Lender's address is
**P. O. BOX 5137, DES MOINES, IA 50306-5137**
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **NORTHWEST TRUSTEE SERVICES, LLC**

**(E) "Note "** means the promissory note signed by Borrower and dated **MAY 23, 2006**
The Note states that Borrower owes Lender **TWO HUNDRED EIGHTY-FIVE THOUSAND AND NO/100** Dollars
(U.S. $ .....**285,000.00**.............) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JUNE 1, 2036**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☒ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider   ☐ Biweekly Payment Rider   ☒ Other(s) [specify]
                                                             **Prepayment Rider**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal

SWA02   Rev 04/02/01   Page 2 of 19   FORM 3048   1/01



TRANSNATION TITLE INSURAN    DT    $57.68

3836714
Page:  2 of 25
06/01/2006 03:23P
Thurston Co, WA

16

and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County of **THURSTON**
[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]
**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

Parcel ID Number:                        which currently has the address of
**1145 VILLANOVA STREET NE**                                [Street]
**OLYMPIA**                    [City], Washington  **98516**     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

SWA03   Rev 04/02/01          Page 3 of 19            FORM 3048   1/01



3836714
Page: 3 of 25
06/01/2006 03:23P
Thurston Co, WA

17

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic



3836714
Page:    4 of 25
06/01/2006 03:23P
Thurston Co, WA

TRANSNATION TITLE INSURAN    DT    $57.00

18

Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with

3836714
Page:    5 of 25
06/01/2006 03:23P
Thurston Co, WA

TRANSNATION TITLE INSURAN        DT      $5.00

19

Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower Interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax



3836714
Page:   8 of 25
06/01/2006 03:23P
Thurston Co, WA

TRANSNATION TITLE INSURAN    DT    $57.00

verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

SWA07   Rev 04/02/01                    Page 7 of 19                    FORM 3048   1/01



3836714
Page: 7 of 25
06/01/2006 03:23P
Thurston Co, WA

21

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or

3836714
Page    8 of 25
06/01/2006 03:23P
Thurston Co, WA

TRANSNATION TITLE INSURAN    DT    $57.00

22

restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that

SWA09   Rev 04/02/01                    Page 9 of 19                    FORM 3048   1/01



3836714
Page    9 of 25
06/01/2006 03:23P
Thurston Co, WA

23

previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements



3836714
Page    10 of 25
06/01/2006 03:23P
Thurston Co. WA

24

will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be



3836714
Page   11 of 25
06/01/2006 03:23P
Thurston Co, WA

25

applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's



consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security



3836714
Page    13 of 25
06/01/2006 03:23P
Thurston Co. WA
TRANSNATION TITLE INSURAN    DT    $57.00

27

Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pusuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration



3836714
Page   14 of 25
06/01/2006 03:23P
Thurston Co. WA
TRANSNATION TITLE INSURAN    DT    $57.99

28

had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of



3836714
Page: 15 of 25
06/01/2006 03:23P
Thurston Co. WA

TRANSNATION_TITLE_INSURAN   GT   $52.00

29

this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may**



3836714
Page:   16 of 25
06/01/2006 03:23P
Thurston Co, WA

*30*

result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Use of Property. The Property is not used principally for agricultural purposes.

SWA17   Rev 04/02/01                Page 17 of 19                     FORM 3048   1/01



3836714
Page:   17 of 25
06/01/2006 03:23P
Thurston Co, WA

31

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Remedios S. Oliveros_____ (Seal)
                                            REMEDIOS S. OLIVEROS          Borrower


_____



3836714
Page: 18 of 25
06/01/2006 03:23P
Thurston Co. WA

32

**STATE OF WASHINGTON**                                                    ss:
County of  **THURSTON**


On this day personally appeared before me

**REMEDIOS S. OLIVEROS, AS HER SEPARATE ESTATE**




to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this 25 day of May 2006.

_____
Notary Public in and for the State of Washington,
residing at: Olympia

My Appointment Expires on

11/19/08



SWA19    Rev 04/02/01                    Page 19 of 19                    **FORM 3048    1/01**



33

Order No.   **PK - 20232485**

## EXHIBIT "A"

LOT 78 OF PLAT OF GEORGETOWNES ESTATES DIVISION TWO, AS PER PLAT RECORDED
FEBRUARY 4, 2003 UNDER RECORDING NO. 3500874, RECORDS OF THURSTON COUNTY
AUDITOR;

SITUATE IN THE **COUNTY OF THURSTON**, STATE OF WASHINGTON.

**3836714**
Page:  20 of 25
06/01/2006 03:23P
Thurston Co. WA

TRANSNATION TITLE INSURAN    DT    $57.00

34

# PREPAYMENT RIDER          0152675856

THIS PREPAYMENT RIDER is made this ....23rd...... day of ....MAY................. 2006...... , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower")     to     secure     Borrower's     Note     to     ............................................... ....WELLS FARGO BANK, N.A............................................................................................of the same date and covering the Property described in the Security Instrument and located at: .1145 VILLANOVA STREET NE, OLYMPIA, WA  98516...................................................

**(Property Address)**

PREPAYMENT COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first .three... (..3..) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge as follows:

.X.. If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount. If within the third year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to one percent (1%) of the original principal amount.

(Page 1 of 2)
PP010A  Rev. 09/13/05

Prepayment Rider



3836714
Page:  21 of 25
06/01/2006 03:23P
Thurston Co, WA

TRANSNATION TITLE INSURAN    DT    $57.00

*35*

0152675856

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount. If within the second year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the original principal amount.

..... If within the first year after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to three percent (3%) of the original principal amount.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_Remedios S. Oliveros_    (Seal)
REMEDIOS S. OLIVEROS                                    -Borrower

Prepayment Rider

PP010C  Rev. 09/12/05

(Page 2 of 2)



TRANSNATION TITLE INSURAN    DT    $57.60

3836714
Page: 22 of 25
06/01/2006 03:23P
Thurston Co, WA

36

# PLANNED UNIT DEVELOPMENT RIDER

0152675856

THIS PLANNED UNIT DEVELOPMENT RIDER is made this .....23rd day of MAY, 2006.................., and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to ...................................................................................................
...............WELLS FARGO BANK, N.A.....................................................................................................
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: ................1145 VILLANOVA STREET NE........................................................................................
....................................OLYMPIA, WA  98516..............................................................................................

*(Property Address)*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in ................................................................................................................................................................
................................................................................................................................................................
(the "Declaration"). The Property is a part of a planned unit development known as ..........................GEORGETOWNES ESTATES DIVISION TWO.............................................................

*(Name of Planned Unit Development)*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER**
**Single Family - FNMA/FHLMC Uniform Instrument**

Form 3150 1/01   (Page 1 of 3)
EC025L Rev. 11/13/00



3836714
Page:  23 of 25
06/01.2006 03:23P
Thurston Co, WA

*37*

0152675856

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender required insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

MULTISTATE PUD RIDER
Single Family - FNMA/FHLMC Uniform Instrument

Form 3150 1/01   (Page 2 of 3)
EC025L Rev. 11/13/00



3836714
Page: 24 of 25
06/01/2006 03:23P
Thurston Co. WA

38

0152675856

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
REMEDIOS S. OLIVEROS                  -Borrower

**MULTISTATE PUD RIDER**                                    Form 3150 1/01   (Page 3 of 3)
**Single Family - FNMA/FHLMC Uniform Instrument**           EC025L Rev. 11/13/00



3836714
Page:  25 of 25
06/01/2006 03:23P
Thurston Co, WA
TRANSNATION TITLE INSURAN    DT    $57.00

*39*

# EXHIBIT "C" ATTACHED

# (HEREUNDER)

After Recording Return to:
Vonnie McElligott
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

## Appointment of Successor Trustee

File No. 7023.15175     0152675856     ⑦ 3593293     #14 —

    Remedios S. Oliveros, as her separate estate is/are the grantor(s), Northwest Trustee Services, LLC is the trustee and Wells Fargo Bank, N.A. is the beneficiary under that certain deed of trust dated 05/23/06 and recorded on 06/01/06 under Thurston County, Washington Auditor's File No. 3836714.

    The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box 997, Bellevue, WA 98009-0997, as successor trustee under the deed of trust with all powers of the original trustee.

    The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the owner and holder of the obligation secured by the subject deed of trust and is not holding the same as security for a different obligation.

               Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2006-18 By its attorney in fact Wells Fargo Bank, N.A.

               By:
               Thomas Westmoreland
               Vice President Loan Documentation

STATE OF ___South Carolina_____ )
                    )as
COUNTY OF ___York_____ )

    I certify that I know or have satisfactory evidence that ___Thomas Westmoreland_____ is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the __ Vice President Loan Documentation_____ of Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2006-18 By its attorney in fact Wells Fargo Bank, N.A.
to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

    Dated: ___1-29-08_____

                                    Pamela K. Fetner
                                    Notary Public in and for the State of___South Carolina_____
                                    Residing at _____
                                      My appointment expires _____

OFFICIAL SEAL
Notary Public
State of South Carolina
PAMELA K. FETNER
My Commission Expires Feb 18, 2015

4000588
04/03/2008 02:51 PM     Miscellaneous
Thurston County Washington
FIRST AMERICAN TITLE

Page 1 of 1

41

# EXHIBIT "D" ATTACHED

# (HEREUNDER)

42

After Recording Return to:
Deutsche Bank National Trust Company, as Trustee
for GSAA Home Equity Trust 2006-18
c/o America's Servicing Company
MAC X7801-02T
3476 Stateview Boulevard
Fort Mills, SC 29715

---

7023.15175/Oliveros, Remedios S.                  0152675856 ③3593293 #14 —

## Assignment of Deed of Trust

For Value Received, the undersigned as Beneficiary, hereby grants, conveys, assigns and transfers to Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2006-18, whose address is c/o America's Servicing Company, MAC X7801-02T, 3476 Stateview Boulevard, Fort Mills, SC 29715, all beneficial interest under that certain deed of trust, dated 05/23/06, executed by Remedios S. Oliveros, as her separate estate, Grantors, to Northwest Trustee Services, LLC, Trustee, and recorded on 06/01/06, under Auditor's File No. 3836714, records of Thurston County, Washington, describing land therein as:

    Abbreviated Legal Description: Lot 78, Georgstowne Estates Div. 2, Rec. 3500874

    Lot 78 of Plat of Georgstowne Estates Division Two, as per Plat recorded February 4, 2003 under Recording No. 3500874, records of Thurston County Auditor, Situate in the County of Thurston, State of Washington.

    Tax Account No. 50550007800

    Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated MARCH 13          , 20 08

                                    Wells Fargo Bank, N.A.
                                    Jeff Stenman, Attorney-in-Fact by Power of Attorney recorded June
                                    28, 2006 under Thurston County, Washington Auditor's File
                                    No. 3941705

                                    By:
                                    Title:              ATTORNEY-IN-FACT

STATE OF WASHINGTON        )
                           ) ss.
COUNTY OF KING             )

    I certify that I know or have satisfactory evidence that JEFF STENMAN is the person who appeared before me, and said person acknowledged that (he) signed this instrument, on oath stated that (he) was authorized to execute the instrument and acknowledged it as the ATTORNEY-IN-FACT of WELLS FARGO BANK, N.A. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

    Dated: MARCH 13, 2008

    ┌─────────────────────────────┐
    │        RHEA S. PRE          │    NOTARY PUBLIC in and for the State of
    │                             │    WASHINGTON
    │   STATE OF WASHINGTON       │    Residing at RENTON
    │                             │    My commission expires 04-22-10
    │   NOTARY — · — PUBLIC       │
    │                             │
    │ COMMISSION EXPIRES 04-22-10 │
    └─────────────────────────────┘

                                    Page 1 of 1

43

# EXHIBIT "E" ATTACHED

# (HEREUNDER)

44

USA-Foreclosure.com

My Account
Logout

Home | Foreclosure Learning Center | Data Feed Services | FAQs | About Us

Expand your investment horizon
USA-Foreclosure.com

Home

# Foreclosure Properties for All States with File Number "7023.70173"

Displaying foreclosure properties 1 - 1 of the 1 found.

**Filter the Results:**

Filter the results by city:

Select city (optional)

Filter the results by ZIP code:

Select ZIP code (optional)

Filter the results by current sale date:

Select sale date (optional)

☑ Show only active sales
☐ Show only Hot Properties
☐ Show only listings with minimum bid
☐ Show only Commercial properties

**Map of Properties 1 - 1:**



Turn off search result mapping



| Trustee Number | Property Address | City | State | Zipcode | Status | Original Sale Date | Previous Postponed Date | Current Sale Date |
|---|---|---|---|---|---|---|---|---|
| 7023.70173 | 1145 VILLANOVA STREET NORTHEAST | Olympia | WA | 98516 | Active | 06/03/2011 | 06/03/2011 | 08/05/2011 |

Number of records to display per page: 50

View printer-friendly list

45

**4207642**          **Pages: 4**
04/21/2011 03:40 PM NTS
Thurston County, Washington
NORTHWEST TITLE

After Recording, Return to:
Heather L. Smith
Northwest Trustee Services, Inc.
P.O. Box 997
Bellevue, WA 98009-0997

File No.:      7023.70173
Grantors:      Northwest Trustee Services, Inc.
               Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity
               Trust 2006-18
Grantee:       Remedios S. Oliveros, as her separate estate
Ref to DOT Auditor File No.: 3836714
Original NTS Auditor File No. 4170561
Tax Parcel ID No.: 50550007800
Abbreviated Legal: Lt 78, Georgetowne

**Amended Notice of Trustee's Sale**
Pursuant to the Revised Code of Washington 61.24, et seq.

I.

On **June 3, 2011**, at 10:00 a.m. near the directory in front of the Thurston County Courthouse, 2000
Lakeridge Drive S.W. in the City of Olympia, State of Washington, the Trustee (subject to any
conditions imposed by the Trustee) will sell at public auction to the highest and best bidder, payable
at time of sale, the following described real property "Property", situated in the County(ies) of
Thurston, State of Washington:

> Lot 78 of Plat of Georgetownes Estates Division Two, as per Plat recorded February 4, 2003
> under Recording No. 3500874, records of Thurston County Auditor; situate in the County of
> Thurston, State of Washington. More Accurately described as Follows: Lot 78 of Plat of
> Georgetowne Estates Division Two, as per Plat recorded February 4, 2003 under Recording
> No. 3500874, records of Thurston County Auditor; Situate in the County of Thurston, State of
> Washington.

Commonly known as:   1145 VILLANOVA STREET NORTHEAST
                     OLYMPIA, WA  98516

which is subject to that certain Deed of Trust dated 05/23/06 and recorded on 06/01/06, under
Auditor's File No. 3836714, records of Thurston County, Washington, from Remedios S. Oliveros, as
her separate estate, as Grantor, to Northwest Trustee Services, LLC, as Trustee, to secure an
obligation "Obligation" in favor of Wells Fargo Bank, N.A., as Beneficiary, the beneficial interest in
which was assigned by Wells Fargo Bank, N.A. to Deutsche Bank National Trust Company, as

46

Trustee for GSAA Home Equity Trust 2006-18, under an Assignment/Successive Assignments recorded under Auditor's File No. 4000588.

*The Tax Parcel ID number and Abbreviated Legal Description are provided solely to comply with the recording statutes and are not intended to supplement, amend or supersede the Property's full legal description provided herein.

II.

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the Obligation in any Court by reason of the Grantor's or Borrower's default on the Obligation.

III.

The Beneficiary alleges default of the Deed of Trust for failure to pay the following amounts now in arrears and/or other defaults:

|  |  | Amount due to reinstate by 04/19/2011 |
|---|---|---|
| Monthly Payments |  | $85,255.02 |
| Late Charges |  | $3,719.52 |
| Lender's Fees & Costs |  | $4,341.21 |
| Total Arrearage | $93,315.75 |  |
| Trustee's Expenses (Itemization) |  |  |
| Trustee's Fee |  | $250.00 |
| Total Costs | $250.00 |  |
| **Total Amount Due:** |  | **$93,565.75** |

Other known defaults are as follows:

IV.

The sum owing on the Obligation is:  Principal Balance of $280,374.20, together with interest as provided in the note or other instrument evidencing the Obligation from 04/01/08, and such other costs and fees as are due under the Obligation, and as are provided by statute.

V.

The Property will be sold to satisfy the expense of sale and the Obligation as provided by statute. The sale will be made without representation or warranty, express or implied regarding title, possession, encumbrances or condition of the Property on **June 3, 2011**. The default(s) referred to in paragraph III, together with any subsequent payments, late charges, advances costs and fees thereafter due, must be cured by 05/23/11 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time before the close of the Trustee's business on 05/23/11 (11 days before the sale date), the default(s) as set forth in paragraph III, together with any subsequent payments, late charges, advances, costs and fees thereafter due, is/are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after 05/23/11 (11 days before

47

the sale date), and before the sale by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire balance of principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any made pursuant to the terms of the obligation and/or Deed of Trust.

## VI.

A written notice of default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

**NAME AND ADDRESS**

| | |
|---|---|
| REMEDIOS S OLIVEROS | REMEDIOS S OLIVEROS |
| 1145 VILLANOVA STREET NORTHEAST | 2526 BARRINGTON COURT NORTHEAST |
| OLYMPIA, WA 98516 | OLYMPIA, WA 98506 |
| | |
| Unknown Spouse and/or Domestic | Unknown Spouse and/or Domestic |
| Partner of REMEDIOS S OLIVEROS | Partner of REMEDIOS S OLIVEROS |
| 1145 VILLANOVA STREET NORTHEAST | 2526 BARRINGTON COURT NORTHEAST |
| OLYMPIA, WA 98516 | OLYMPIA, WA 98506 |

by both first class and either certified mail, return receipt requested on 01/15/10, proof of which is in the possession of the Trustee; and on 01/15/10 Grantor and Borrower were personally served with said written notice of default **or** the written notice of default was posted on a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

## VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it a statement of all foreclosure costs and trustee's fees due at any time prior to the sale.

## VIII.

The effect of the sale will be to deprive the Grantor, and all those who hold by, through or under the Grantor, of all their right, title and interest in the Property.

## IX.

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

## X.

NOTICE TO OCCUPANTS OR TENANTS - The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceedings under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

*48*

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com

EFFECTIVE: 04/19/2011

Northwest Trustee Services, Inc., Trustee

By _____
Authorized Signature
P.O. BOX 997
Bellevue, WA 98009-0997
Contact:  Heather L. Smith
(425) 586-1900

STATE OF WASHINGTON  )
                     ) ss.
COUNTY OF KING       )

I certify that I know or have satisfactory evidence that Heather Smith is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the Assistant Vice President of Northwest Trustee Services, Inc. to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:  4/20/11

NEANG AVILA
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
06-11-12

NOTARY PUBLIC in and for the State of Washington, residing at Maple Valley
My commission expires 06/11/2012

NORTHWEST TRUSTEE SERVICES, INC, P.O. BOX 997,  BELLEVUE, WA 98009-0997 PHONE (425) 586-1900 FAX (425) 586-1997

File No:  7023.70173
Client:  Wells Fargo Home Mortgage
Borrower:  OLIVEROS, REMEDIOS S

SERVING WA, OR, ID, AK, CA, NV, AZ, MT, HI

This is an attempt to collect a debt and any information obtained will be used for that purpose.

49

Northwest Trustee Services, Inc.
PO Box 997
Bellevue, WA 98009-997

## Notice of Postponement
### Required under RCW 61.24.040(6)(a)

Please be advised that:

    The Trustee's Sale under that certain Deed of Trust in which Remedios S. Oliveros, as her separate estate, as grantor Wells Fargo Bank, N.A., is Beneficiary, dated 05/23/2006, and recorded on 06/01/2006 under Thurston County Auditor's File No. 3836714, has been postponed from 06/03/2011 to 08/05/2011 at 10:00 a.m. at near the directory in front of the Thurston County Courthouse, 2000 Lakeridge Drive S.W., Olympia.



Property:    1145 VILLANOVA STREET NORTHEAST
               OLYMPIA, WA 98516

The trustee's rules of auction may be accessed at www.northwesttrustee.com and are incorporated by this reference. You may also access sale status at www.northwesttrustee.com and www.USA-Foreclosure.com.

Date: June 3, 2011

                                Mailed by or on behalf of
                                **Northwest Trustee Services, Inc.,**
                                **Trustee**

**File No:**   7023.70173
**Client:**    Wells Fargo Home Mortgage
**Borrower:** OLIVEROS, REMEDIOS S



*50*