HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REMEDIOS S. OLIVEROS,

    Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, N.A., as trustee for GSAA HOME EQUITY TRUST 2006-18; and NORTHWEST TRUSTEE SERVICES, INC.,

    Defendants.

No. 3:11-cv-05581-RBL

ORDER

[Dkt. #20]; [Dkt. #22]; [Dkt. #26]

## I.    INTRODUCTION

Plaintiff Remedios S. Oliveros presents claims arising from the attempted foreclosure of her residential property by Defendant Deutsche Bank National Trust Company, N.A. Ms. Oliveros alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Real Estate Settlement Procedures Act ("RESPA"), the Washington Deed of Trust Act, RCW 61.24 et seq., and claims that Defendants slandered title to her property. Before the Court are motions to dismiss from both Deutsche Bank [Dkt. #20] and Northwest Trustee Services, Inc. [Dkt. #22]. Because the Complaint lacks factual support under any legal theory, the Court **GRANTS** the motion and **DISMISSES** the case with prejudice. The Court also finds that Deutsche Bank's motion to compel initial disclosures [Dkt. #26] is moot, and **DENIES** the motion.

## II. FACTUAL BACKGROUND

Ms. Oliveros has filed a form complaint, a nearly identical copy of which the Court has already dismissed. *See Van Nguyen v. Recontrust Co., N.A.*, No. 11-cv-5642, 2012 WL 34259 (W.D. Wash. Jan. 6, 2012).

In May 2006, Ms. Oliveros borrowed $285,000 from Wells Fargo Bank, N.A. to purchase residential property, executing a promissory note in the process ("Note"). Pl.'s Compl. at 3 [Dkt. #1]. The loan was secured by a deed of trust ("Deed"), which grants the Note holder the power to foreclose the property in the event of default. Pl.'s Compl., Ex. B; Req. for Judicial Notice, Ex. 1 at 17 [Dkt. #21].[1] Wells Fargo subsequently sold the Note and assigned the Deed to Deutsche Bank, as trustee for the GSAA Home Equity Trust 2006-18. *See* Oliveros Aff. at 5 [Dkt. # 5]; Req. for Judicial Notice, Ex. 2 at 1. On January 29, 2008, Deutsche Bank executed an appointment of successor trustee, naming Northwest Trustee Services, Inc. as trustee under the Deed. *Id.*, Ex. 3 at 1. Northwest Trustee subsequently recorded a Notice of Trustee's Sale on September 15, 2010. *Id.*, Ex. 4.

In response to Deutsche Bank's foreclosure, Ms. Oliveros filed a UCC Financing Statement, which asserts a $2.8 million lien against Wells Fargo and Northwest Trustee and lists Ms. Oliveros as the secured party. *Id.*, Ex. 7; Pl.'s Resp. at 2. Ms. Oliveros has also recorded a *lis pendens* on the property. *Id.*, Ex. 8.

Ms. Oliveros does not appear to dispute default; rather, the basis of her claims lies in her concern that Deutsche Bank does not own her Note:

> I have not seen the Note since the date and time that I signed it; I do not know if, where or to whom my Note was sent after I signed it; I do not know if the Lender and/or Successor(s) is/are civilly bankrupt, civilly dead or a debtor in possession and able to make its own claim because these facts are being fraudulently concealed. . . . I am unable to make a legal determination, and cannot speculate as to whether my Note is/was held, sold, exchanged for cash . . . or if there has been any attempt to return it or present it to me. . . . I deny the authenticity of all purported versions of the Note whether purported

---

[1] The court may properly consider the Deed of Trust, Assignment of the Deed of Trust, Notice of Trustee's Sale, and other exhibits because they are referenced in the Complaint, integral to the proceedings, and their authenticity undisputed. *Dent v. Cox Comm. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007) (expressly permitting district court to consider an integral and authentic document outside the pleadings) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiffs complaint necessarily relies." *Id*, *superseded by statute on other grounds as noted in Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)).

> be original, copies or certified copies *until I am afforded opportunity to inspect the purported Note . . . .*

Oliveros Aff. at 5 [Dkt. #1-2] (emphasis added); *see also* Compl. at 7 (alleging that Ms. Oliveros is "unaware of any evidence that the purported Note was ever endorsed or transferred to the Defendant"). The Deed of Trust, signed by Ms. Oliveros, states that the lender may transfer the Note without notice to borrower—Ms. Oliveros. Req. for Judicial Notice, Ex. 1 at 15 ("The Note or a partial interest in the Note . . . can be sold one or more times without prior notice . . . .").

Based on these facts, Ms. Oliveros presents a variety of claims. First, Ms. Oliveros asserts a claim for "disparity." Compl. at 4. The basis for this claim is unclear. The Complaint appears to reason that because Washington courts have rejected so-called "show me the note" claims, that "any demand for payment/proof of payment . . . under that note also lacks merit." *Id.*

Second, Ms. Oliveros claims that she sent Deutsche Bank a qualified written request under RESPA, 12 U.S.C. § 2605(e), but that she "never received any response and/or received an inadequate response." Compl. at 5.

Third, Ms. Oliveros claims that Deutsche Bank violated the FDCPA, 15 U.S.C. § 1692, by failing to offer verification of her debt, by failing to "sen[d] a dunning letter," and by taking "non-judicial action." *Id.* The Complaint itself appears to request verification of the debt. *See id.*

Fourth, Ms. Oliveros claims Deutsche Bank erroneously reported her default to credit reporting agencies and thus violated the FCRA, 15 U.S.C. § 1681. *Id.*

Fifth, Ms. Oliveros presents a claim for "recoupment and setoff," citing a number of federal and state securities laws, and arguing that "[t]here is no evidence of the Defendant(s) standing to foreclose non-judicially." Compl. at 6–7.

Sixth, Ms. Oliveros asserts a violation of the Washington Deed of Trust Act, RCW 61.24. Compl. at 7. The Complaint rests the violation on a single fact: Deutsche Bank executed the Appointment of Successor Trustee three months before Wells Fargo executed the Assignment of the Deed of Trust. *Id.*

Lastly, Ms. Oliveros presents a claim for slander of title. *Id.* at 8. In short, she argues that Deutsche Bank slandered title to her property by causing the Northwest Trustee to record a Notice of Default. *Id.*

Ms. Oliveros seeks declaratory and injunctive relief, including rescission of the deed, and monetary damages.

### III. DISCUSSION

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, *Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly* ).

Here, the Complaint fails to state facts sufficient to sustain a claim under any legal theory, and thus Plaintiff's claims fail as a matter of law.

**A. Disparity Claim**

Ms. Oliveros's claim for "disparity" is not a recognized cause of action. It is a variation on the "show me the note" claims that courts routinely reject. *See, e.g.*, *Mikhay v. Bank of Am., NA.,* 2011 WL 167064, *2–*3 (W.D. Wash. 2011); *Wright v. Accredited Home Lenders*, 2011

WL 39027 (W.D. Wash. 2011); *Pelzel v. First Saving Bank Northwest,* 2010 WL 3814285, at *2 (W.D. Wash. 2010); *Wallis v. IndyMac Fed. Bank*, 717 F. Supp. 2d 1195, 1200 (W.D. Wash. 2010); *Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276, at *6 (W.D. Wash. 2010). Indeed, the Washington Deed of Trust Act requires that a foreclosing lender demonstrate its ownership of the underlying note to the Trustee, not the borrower. RCW 61.24.030(7). Thus, Ms. Oliveros's "disparity" claim necessarily fails.

### B. RESPA Claim

Ms. Oliveros' RESPA-claim lacks any factual allegations and is not plausible on its face. RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). A "qualified written request" ("QWR") is defined as a written document including the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). When a loan servicer receives a QWR, RESPA requires that:

> Action with respect to inquiry: Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

The Complaint fails to identify the nature of the alleged qualified written request, the date sent, or the supposed reason that the response was "inadequate." Compl. at 5. Further, the Complaint fails to allege harm. Under RESPA, a borrower may recover actual damages for a lender's failure to respond to a QWR, as well as statutory damages of $1,000 if she can establish that the lender's failure to respond is part of a pattern or practice. *See* 12 U.S.C. § 2605(f)(1). The Complaint pleads neither actual damages nor a pattern of failure.

### C. FDCPA Claim

The FDCPA similarly fails for lack of factual support. Under the FDCPA, a consumer may dispute a debt and request verification of the debt before a creditor can continue collection activities. 15 U.S.C. § 1692g(b). If a creditor receives a request for verification, it must "obtain[ ] verification of the debt or a copy of a judgment, or the name and address of the original creditor, and [mail] a copy of such verification or judgment, or name and address of the original creditor, . . . to the consumer by the debt collector." *Id.* Ms. Oliveros states only that Deutsche Bank failed to offer verification of her debt by sending a dunning letter, not that she made any request for verification. Compl. at 5.

Moreover, the Complaint fails to allege facts sufficient to show that Deutsche Bank is a "debt collector" within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a. The law is well settled that the "FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt." *Segle v. PNC Mortg.*, 2011 WL 1098936, at *7 (W.D. Wash. Mar. 25, 2011) (citing *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010) (collecting cases)). As such, Deutsche Bank is not subject to the FDCPA here.

### D. FCRA Claim

Congress enacted FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson, LLP*,

584 F.3d 1147, 1154 (9th Cir. 2009) (quotation omitted). The FCRA imposes duties on furnishers of information to CRAs. *See* 15 U.S.C. §§ 1681s-2(a)(3) & 1681s-2(b). After receiving notice of a dispute from a CRA, furnishers must "conduct an investigation with respect to the disputed information" and "report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s-6 2(b)(A), (C). Importantly, "[t]hese duties arise only after the furnisher receives notice of a dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at 1154.

Here, Ms. Oliveros fails to identify any erroneous report made to any credit rating agency or facts supporting that Ms. Oliveros properly disputed any report with the credit rating agencies. *See* Compl. at 5–6. Thus, the Court dismisses the claim.

### E. Recoupment and Setoff Claim

Ms. Oliveros cites a number of federal and state securities laws in an attempt to affirmatively claim recoupment and setoff. The claim is not viable as a matter of law and, in any event, the Complaint fails to allege any facts in support of such a claim.

### F. Washington Deed of Trust Act Claim

Ms. Oliveros asserts that Deutsche Bank violated the Washington Deed of Trust Act by executing the Appointment of Successor Trustee three months before Wells Fargo assigned the Deed. *See* Compl. at 7. Under RCW 61.24.010(2), a beneficiary of a deed may replace the trustee by recording an appointment of successor trustee. The appointment, however, is effective only "upon recording." *Id.*

Here, Deutsche Bank properly recorded the Appointment on April 3, 2008, at the same time Wells Fargo assigned the Deed. Deutsche Bank was empowered to appoint Northwest Trustee, and the Complaint thus alleges no facts sufficient to support a claim.

### G. Slander of Title

Ms. Oliveros alleges that Deutsche Bank and Northwest Trustee slandered title to her property by recording a Notice of Trustee's Sale.[2] Compl. at 8. To succeed on a slander of title claim, a plaintiff must show (1) false words; (2) maliciously published; (3) referencing a pending

---

[2] Although the Complaint references a notice of default, a document not typically recorded, the Court will presume that Ms. Oliveros intended to reference the Notice of Trustee's Sale, which was recorded in this case.

sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in pecuniary loss to plaintiff. *Rorvig v. Douglas*, 123 Wn.2d 854, 859–60 (1994).

Here, Ms. Oliveros has not alleged that Deutsche Bank maliciously recorded the Notice of Trustee's Sale. Indeed, Washington law requires Deutsche Bank to record such a notice following a borrower's default. *See* RCW 61.24.030. The Complaint therefore lacks sufficient facts to maintain a claim for slander of title.

### H. Leave to Amend

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962). On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

The essential facts are not in dispute in this case; thus, the Court denies leave to amend.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the motions to dismiss, **[Dkt. #20]**; **[Dkt. #22]**, and **DISMISSES** the case with prejudice. The Court also finds that Deutsche Bank's motion to compel initial disclosures [Dkt. #26] is moot, and **DENIES** the motion.

Dated this 13th day of January, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE